**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>　　Plaintiff**,**<br><br>　　v.<br><br>**[1] CELSO JOSE MARVAL-RIVERO**<br>**et al.,**<br><br>　　Defendants**.** | **CRIMINAL NO. 19-714 (PAD)** |

## UNITED STATES' MOTION FOR A PRE-TRIAL DETERMINATION OF JURISDICTION

**TO THE HONORABLE COURT:**

　　**COMES NOW**, the United States of America by and through the undersigned attorneys and before this Honorable Court very respectfully prays that this Court make a pre-trial jurisdictional determination. In particular, the United States requests a determination that the Go-Fast Vessel (hereinafter GFV) in this case is "subject to the jurisdiction of the United States" within the meaning of the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 70501 *et seq.*

## BACKGROUND

I. <u>Case-Specific Facts</u>

　　On October 19, 2019, while on routine patrol, a Marine Patrol Aircraft (MPA) located a Go-Fast Vessel (GFV) heading north at 20kts 60NM North of La Guajira, Colombia. Upon detection by the MPA, the GFV altered course south and began to jettison packages. The MPA reported this information to the Dutch Navy Vessel HNLMS GRONINGEN with the embarked United States Coast Guard Law Enforcement Detachment (LEDET) 101. HNLMS GRONINGEN deployed their small boat, with LEDET members onboard. Once within visual distance from the GFV, the small boat engaged the blue light announcing law enforcement presence. The GFV was

underway and the small boat had to give pursuit of the GFV, reaching speeds of 20+ knots. While giving chase, law enforcement observed packages being jettisoned from the GFV. Throughout the pursuit, LEDET members were giving verbal commands for the GFV to halt. Ultimately, the GFV came to a stop. USCG LEDET members boarded the vessel and removed the keys to the ignition of the GFV.

The master of the GFV made a verbal claim of Venezuelan nationality for the vessel and its crew. On October 19, 2019, the recognized government of Venezuela waived its primary right to exercise jurisdiction over the GFV and its crew and consented to the enforcement of United States law.

A second small boat was deployed to recover the jettisoned packages. A total of eleven (11) bales of contraband were recovered. Law enforcement seized approximately 330 kilograms of cocaine. A field test of a sample resulted positive to cocaine. The second small boat also recovered satellite phones, cellular phones, documents, and wallets. Ion scan swipes on the vessel yielded positive to cocaine.

All three defendants made incriminating statements advising they were aware that they were transporting cocaine or drugs.

On November 6, 2019, a federal grand jury returned an indictment against all three defendants charging them with Aiding and Abetting in the Possession with Intent to Distribute a Controlled Substance on Board a Vessel Subject to the Jurisdiction of the United States. ECF No. 19.

On March 5, 2020, Coast Guard Commander David Bartram, the U.S. Secretary of State's authorized designee under the MDLEA, certified under penalty of perjury that the Government of

Venezuela authorized the United States to exercise jurisdiction over the Go-Fast Vessel, its cargo, and its crew. *See* Exhibit 1.

Defendants have raised a jurisdictional challenge with the United States and informed the Court of their intention to contest jurisdiction over the vessel at the November 20, 2019 and March 11, 2020 status conferences. ECF No. 23 & 28. In particular, defendants intend to contest both the existence and legitimacy of the consent provided by the recognized Venezuelan government (led by Juan Guaidó) regarding the exercise of jurisdiction over the GFV in the instant case and its crew.

II.     Recognition of the Venezuelan Government Led By Juan Guaidó

On January 23, 2019, the President of the United States "officially recognize[ed] the President of the Venezuelan National Assembly, Juan Guaidó, as the Interim President of Venezuela." *See Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela*, available at https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/. The President, moreover, has not wavered in that recognition. Juan Guaidó was invited to – and attended – the February 4, 2020 State of the Union address (where he received a bipartisan standing ovation from members of Congress). See *Trump Gives Venezuela's Guaidó the Embrace He Wanted*, N.Y. Times, Feb. 5, 2020 ("In one of the night's few bipartisan moments, Republicans and Democrats stood to applaud Mr. Guaidó.").

**INTENTIONALLY BLANK**

## APPLICABLE LAW AND RELEVANT LEGAL STANDARDS

I.  The Maritime Drug Law Enforcement Act

The MDLEA was passed to provide a tool for the federal government to combat international drug trafficking of the precise variety defendants engaged in here. *See* 46 U.S.C. § 70501 ("Congress finds and declares that . . . trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States.").

Under the MDLEA, the United States must establish jurisdiction over a vessel in order to charge an individual with a violation of the statute. *See* 46 U.S.C. §§ 70503(e), 70502(b)-(e). "Jurisdiction of the United States with respect to a vessel subject to this chapter," however, "is not an element of an offense." 46 U.S.C. § 70504(a). Instead, "[j]urisdictional issues arising under [the MDLEA] are preliminary questions of law to be determined solely by the trial judge." *Id.* (emphasis added). The government need only prove jurisdiction by a preponderance of the evidence. *See United States v. Matos–Luchi*, 627 F.3d 1, 5 (1st Cir. 2010).

In the context of the exercise of jurisdiction over a foreign-flagged vessel, there is a particular mechanism in place for the U.S. government to obtain consent from the foreign nation. The relevant statute provides that the U.S. may exercise jurisdiction over a "vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(C). The provision governing consent or waiver of objection reads as follows:

**INTENTIONALLY BLANK**

> Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States . . . (A) may be obtained by radio, telephone, or similar oral or electronic means; and (B) *is proved conclusively by certification of the Secretary of State or the Secretary's designee*.

46 U.S.C. § 70502(c)(2) (emphasis added).

Put simply, as relevant here, a certification from the Secretary of State or his designee regarding the foreign nation's consent is binding on the Court and the parties. *Id.* The statute's language, which provides that the certification "prove[s] conclusively" the legitimacy of the exercise of jurisdiction, means just that. The statute leaves no space for further litigation regarding the jurisdictional issue: "proved conclusively" cannot possibly mean "proved conclusively, but not always."

The First Circuit has been unusually clear in upholding this principle. In *United States v. Cardales-Luna*, 632 F.3d 731, 736 (1st Cir. 2011), for example, the defendant challenged an MDLEA certification from Bolivia, asserting that the factual summary provided by the Secretary of State's designee was deficient in several respects. The First Circuit directly foreclosed the challenge by affirming that a certification provided in accordance with 46 U.S.C. § 70502, regardless of form or content, is conclusive evidence that a vessel is subject to the jurisdiction of the United States. *Id.* at 736-737 ("Such a certification is 'conclusive[],' and any further question about its legitimacy is a question of international law that *can be raised only by the foreign nation*." (internal quotation marks and citation omitted) (emphasis added)); *United States v. Guerrero*, 114 F.3d 332, 340 n. 9 (1st Cir. 1997) ("We acknowledge that the 1996 amendments to [the MDLEA] provide that the Secretary of State's certification 'conclusively' proves a foreign nation's consent.").

The certification terminates any jurisdictional dispute; MDLEA defendants cannot seek to "look behind" the certification to establish some basis for contesting jurisdiction. *See* 46 U.S.C. § 70505 (recognizing that an individual charged under the MDLEA "does not have standing to raise a claim of failure to comply with international law as a basis for a defense."); *see also* S. Rep. No. 99–530, at 16 (1986) ("In the view of the Committee, only the flag nation of a vessel should have a right to question whether the Coast Guard has boarded that vessel with the required consent."). Yet in *United States v. Martinez*, 640 F. App'x 18, 23 (1st Cir. 2016), that is precisely what the defendant sought to do. In that case, the defendant sought to argue that the certification was not necessarily conclusive, but his argument was rejected by the First Circuit. The First Circuit explained that the "MDLEA does not give him standing . . . to 'look behind' the USCG certification and to challenge its factual underpinnings." *Id.* (citing *Cardales–Luna*, 632 F.3d at 737). At bottom, the "MDLEA's jurisdiction provision is not concerned with a defendant's interests at trial, but instead with the *rights of governments*, determined by a judge prior to trial." *United States v. Mitchell-Hunter*, 663 F.3d 45, 51 (1st Cir. 2011) (emphasis added)[1].

II.     Constitutional Principles Regarding Authority to Recognize Foreign Governments

Further, the President of the United States "has the exclusive power to grant formal recognition to a foreign sovereign." *Zivitofsky ex rel. Zivitofsky v. Kerry*, 135 S. Ct 2076, 2094 (2015). Unlike other Executive diplomatic acts, which may lend themselves to varying degrees of Congressional challenge, recognition of a foreign state is a unique power placed by the Constitution solely in the hands of the Executive and beyond any possibility of review by the other

---

[1]To the extent defendants challenge the constitutionality of the MDLEA, this Court has in fact already noted that the "MDLEA has been found constitutional by the courts in the jurisdiction of the First Circuit." *Berroa Santana v. United States*, 939 F. Supp. 2d 109, 123 (D.P.R. 2013) (Dominguez, J.) (citing *United States v. Nueci–Peña*, 711 F.3d 191 (1st Cir. 2013); *United States v. Angulo–Hernández, et al.*, 565 F.3d 2 (1st Cir. 2009); *United States v. Vilches–Navarrete*, 523 F.3d 1 (1st Cir. 2008)).

branches. See id.; see also, e.g., Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 410 (1964) ("Political recognition is exclusively a function of the Executive. The possible incongruity of judicial 'recognition', by permitting suit, of a government not recognized by the Executive is completely absent when merely diplomatic relations are broken."). And, even where the Supreme Court has recognized some Congressional power to shape foreign policy under the Constitution, it has expressly withheld from the federal courts any similar authority. See Zivitofsky, 135 S. Ct. at 2080 ("In our constitutional system these matters are committed to the Legislature and the Executive, not the Judiciary.").

This lack of constitutional authority over foreign relations means courts lack authority to weigh questions of de facto or de jure authority in the face of an Executive recognition of a foreign government. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 n.2 (3rd Cir. 2019) ("As a practical matter, there is reason to believe that Guaidó's regime does not have meaningful control over Venezuela Nonetheless we recognize Guaidó's regime as authorized to speak and act on behalf of Venezuela in these appeals.").

## DISCUSSION

In this case, the record establishes unequivocally that the United States obtained consent from the recognized Venezuelan government to exercise MDLEA jurisdiction over the GFV and her crew. The U.S. government contacted the recognized Venezuelan government to request its consent to the enforcement of U.S. law on the GFV. The Venezuelan government consented to that exercise of jurisdiction. Coast Guard Commander Bartram, the Secretary of State's designee, validly certified (in Exhibit 1) Venezuelan consent to the exercise of U.S. jurisdiction. *See* 46 U.S.C. § 70502(c)(2)(B) ("Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States is *proved conclusively* by certification of

7

the Secretary of State or the Secretary's designee." (emphasis added)). That certification is binding on the Court under the plain language of § 70502(c)(2)(B). Moreover, as discussed above, the First Circuit has echoed that command, holding that a certification like Commander Bartram's forecloses further litigation over jurisdiction. *See Cardales-Luna*, 632 F.3d at 737 ("Such a certification is 'conclusive[],' and any further question about its legitimacy is a question of international law that *can be raised only by the foreign nation*." (internal quotation marks and citation omitted) (emphasis added)); *Guerrero*, 114 F.3d at 340 n.9 ("We acknowledge that the 1996 amendments to [the MDLEA] provide that the Secretary of State's certification 'conclusively' proves a foreign nation's consent.").

The United States anticipates that defendants may claim that the consent given by the Government of Venezuela in this case was invalid because it was provided by representatives of the Guaidó government. As the cases outlined above make clear, however, once the President has recognized the government of another nation as having authority to speak on that nation's behalf, courts have no authority to question or undermine that recognition. *See, e.g.*, *Zivitofsky*, 135 S. Ct at 2086 ("Recognition is a topic on which the Nation must speak with one voice. That voice must be the President's." (internal quotation marks and citations omitted)). Indeed, even Congress, which has traditionally exercised at least some authority in the context of foreign affairs, lacks authority to recognize foreign states. *Id.*

Finally, the defendants are not entitled to any additional documentation into the communications between the U.S. government and the recognized Venezuelan government. Such communications, however, are reflected in Commander Bartram's certification, which has been provided to the defendants in discovery. By seeking to "look behind" Commander Bartram's certification, this defendant is undertaking an inquiry that the First Circuit has already explicitly

8

barred. *See Martinez*, 640 F. App'x at 23 ("Rosario's claim fails, therefore, because it is plainly an effort to 'look behind' the USCG certification and to challenge its factual underpinnings, an effort that the MDLEA does not give him standing to undertake."). By producing the certificate, the government has provided the defendants with all the jurisdictional discovery to which they are entitled.

The Government accordingly requests that the Court issue a pre-trial ruling that the United States may exercise jurisdiction under the MDLEA over the GFV and her crew (including the defendants here). Such pre-trial rulings are common and have been accepted by federal circuit courts of appeal. *See, e.g.*, *United States v. Ramirez*, 785 F. App'x 758, 760 (11th Cir. 2019) (discussing the government's pre-trial motion "for a determination of jurisdiction").

## **CONCLUSION**

The Supreme Court has been clear: only the President can recognize a foreign government. That recognition power is vested in the President by Article II of the U.S. Constitution. The authority to recognize foreign governments does *not* lie with Congress; it does *not* lie with federal courts; it does *not* lie with the citizens of a foreign nation; and it most assuredly does *not* lie with federal criminal defendants. Any alternative to vesting recognition authority solely in the President would wreak havoc on MDLEA enforcement, because any MDLEA defendant could contend that the U.S.-recognized government of a foreign nation is not in fact the legitimate government of that nation.

Moreover, the MDLEA is *also* clear: a certification from the Secretary of State or his designee regarding the recognized foreign government's consent conclusively establishes U.S. jurisdiction over a vessel. The statute leaves no room for debate or protracted litigation, nor does the relevant and binding First Circuit precedent discussed above.

Because the United States must establish jurisdiction over the vessel in order to proceed to trial against defendants, the government respectfully requests a pre-trial ruling from the Court foreclosing further litigation over the legitimacy of the exercise of jurisdiction over the GFV and her crew.

**WHEREFORE**, the United States respectfully prays that the Court issue a pre-trial ruling resolving one of the core disputed issues in this case, and hold that the certification provided by the Secretary of State's designee in this case establishes jurisdiction under the MDLEA.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 21st day of September, 2020.

W. STEPHEN MULDROW
United States Attorney

*/s/ Vanessa E. Bonhomme*
Assistant United States Attorney
Vanessa E. Bonhomme
USDC No. G01817
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel: (787) 772-3975
Email: vanessa.e.bonhomme@usdoj.gov

Motion for Pre-Trial Determination of Jurisdiction
Def. Marval-Rivero, et al.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of September, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in this case.

/s/ Vanessa E. Bonhomme
Vanessa E. Bonhomme
Assistant United States Attorney